**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THEODORE JACKSON**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-2842-KSM** |
| **EDWARD ROSEN,** | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                    **June 26, 2020**

Plaintiff Theodore Jackson brings this case against Defendant Edward Rosen, a detective with the Marple Township Police Department, in his official and individual capacities, for violations of Jackson's constitutional and statutory rights.  Jackson also seeks leave to proceed with this case without paying the Court's filing fee.  For the following reasons, Jackson's request to proceed *in forma pauperis* is granted, and his complaint is dismissed.

## I.    *Factual Background*

Jackson is currently incarcerated at SCI-Laurel Highlands.  (Doc. No. 2 at p. 2.)  He was arrested by Detective Rosen on June 1, 2018 on a warrant[1] issued by a Marple Township magistrate judge.  (*Id.* at p. 12.)  Jackson alleges that on that date, Rosen took him to the Marple Township Police Department for questioning and that Rosen continued to question him even after Jackson requested counsel and invoked his right to remain silent.  (*Id.* at p. 13.)  Detective Rosen allegedly told Jackson he did not need a lawyer because they were "just talking" and

---

[1] It is not clear from the Complaint whether the warrant was an arrest warrant or a parole detainer warrant. Jackson appears to assert that it was both.  (*See* Doc. No. 2 at p. 12.)

promised not to run a detainer search and to let Jackson go if he agreed to provide information to Rosen.  (*Id.*)  Jackson asserts that he was released after Rosen spoke with a superior.  (*Id.* at 13–14.)  In the weeks that followed, Jackson met Detective Rosen multiple times at a baseball field behind a Catholic school.  (*Id.* at 14.)  Later in June, Jackson met with both Detective Rosen and the District Attorney, and they gave him papers to sign that would allow them to listen to his phone.  (*Id.*)  Jackson asked for a lawyer to look at them, but the District Attorney told him that he could "sign it and go home or don't and go to jail."  (*Id.*)

Jackson asserts that Detective Rosen used him as a confidential informant until July 20, 2018, when Rosen and another detective arrested Jackson for a second time — apparently on the original charge — because, Rosen told him, he was wasting their time.  (*Id.*)  Jackson was detained until the next day when he was arraigned on charges of possession of controlled substances with intent to deliver.  (*Id.* at 15.)  Jackson states that the offense date listed in the charge was May 15, 2018, but the affidavit supporting the charges states June 1, 2018.  (*Id.*)  He asserts that Rosen lied to the judge about finding drugs and that the District Attorney presented false evidence.  (*Id.*)

A review of publicly available records[2] shows that Jackson was arrested on July 21, 2018 for manufacture, delivery, or possession of controlled substances with intent to deliver and other drug-related charges.  *Commonwealth v. Jackson*, CP-23CR-6588-2018 (CCP Delaware).  The Criminal Docket lists the offense dates as May 15, 2018 and June 1, 2018.  *Id.*  Jackson entered a guilty plea on the charges for manufacture, delivery, or possession with intent to manufacture or

---

[2] While screening a case under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court will analyze whether the complaint should be dismissed for failure to state a claim upon which relief can be granted.  As part of that review, we may consider matters of public record.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Castro-Mota v. Smithson*, Civ. A. No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020).

deliver; use/possession of drug paraphernalia; and criminal use of a communication facility. *Id.* The remaining charges were dismissed. *Id.* The records show that Jackson did not appeal his conviction or sentence. *Id.*

Jackson brings this action *pro se*. Using the Court's form for prisoners to bring claims under 42 U.S.C. § 1983, he alleges that Detective Rosen violated his constitutional and statutory rights. He also claims that Detective Rosen's actions show bias against African Americans because when Jackson was taken to the police station on June 1, 2018, a search warrant was allegedly executed at an apartment rented by a white man named Gregory Lassitter, who was also allegedly involved in drug trafficking but not arrested. (Doc. No. 2 at p. 13.) With his complaint, Jackson filed a request to proceed without paying the Court's filing fee. (Doc. No. 1.)

**II.     *Standard of Review***

Because Jackson is unable to pay the filing fee in this matter, the Court grants him leave to proceed *in forma pauperis*.[3] *See* 28 U.S.C. § 1915(a) (stating that the Court may authorize the commencement of a lawsuit "without prepayment of fees or security" upon a showing that a prisoner is "unable to pay such fees or give security therefor").

The Court also analyzes whether Jackson's complaint states "a claim on which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that — the action or appeal fails to state a claim on which relief may be granted."). In analyzing a complaint under § 1915(e)(2)(B)(ii), we use the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v.*

---

[3] Although we grant Jackson's request to proceed *in forma pauperis*, he is still required to pay the filing fee in full in installments. *See* 28 U.S.C. § 1915(b)(1) (explaining that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee" when funds exist).

*McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Conclusory allegations do not suffice. *Id.* However, because Jackson is proceeding *pro se*, we liberally construe the allegations in the complaint. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

## III.   *Discussion*

Jackson brings his complaint under 42 U.S.C. § 1983. (Doc. No. 2 at p. 3.) That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Jackson alleges that during the time in question, Detective Rosen was an "employee of the Marple Township Police Dep[artment and] the Delaware County Criminal Investigations Division," and that he was acting under color of Pennsylvania law when he arrested and questioned Jackson. (Doc. No. 2 at pp. 12–13.) Citing the Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments, Jackson contends that Rosen violated his *Miranda* rights, unlawfully discriminated against him on the basis of race, and violated his right to due process. (*Id.* at

4

pp. 3, 12.)  Jackson also brings federal statutory claims under 31 U.S.C. § 6711, 51 U.S.C. §

20137, and 18 U.S.C. § 2255, along with state law claims for negligence, abuse of power,

selective prosecution, official misconduct, and tampering with evidence.  (*Id.* at 3, 13.)  He seeks

money damages.  (*Id.* at 5.)  He also seeks to withdraw his guilty plea and get a new trial, to have

Rosen barred from working as a police officer, and to have Rosen issue a public apology.  (*Id.* at

16.)

### A.      *Claim Seeking a New Trial and Withdrawal of Guilty Plea*

Preliminarily, to the extent that Jackson seeks to use this § 1983 action as a means to

withdraw his guilty plea or seek a new trial, the claim must be dismissed because it seeks relief

in the nature of habeas corpus.  *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a

state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief

he seeks is a determination that he is entitled to immediate release or a speedier release from that

imprisonment, his sole federal remedy is a writ of habeas corpus.").  Seeking to withdraw a

guilty plea or to be granted a new trial is the type of relief that is only available in a habeas

corpus action.  *Allen v. Pennsylvania*, 512 F. App'x 136, 137 (3d Cir. 2013) (citing *Preiser* and

affirming district court's finding that "to the extent that Allen sought to withdraw his plea and

vacate his sentence, such relief is available only in habeas corpus action").  Accordingly, the

complaint is dismissed with prejudice to the extent that Jackson requests a new trial.

Turning to Jackson's substantive claims, we will address his constitutional claims before

analyzing his statutory claims under federal and state law.

B.      **Federal Constitutional Claims**

Jackson cites the Fourth, Fifth, Sixth, Ninth and Fourteenth Amendments of the United

States Constitution as bases for his claims.  These claims implicate the doctrine described in

*Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the United State Supreme Court explained:

> [T]o recover damages [or other relief] for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983 plaintiff must prove that the
> conviction or sentence has been reversed on direct appeal, expunged by executive
> order, declared invalid by a state tribunal authorized to make such determination,
> or called into question by a federal court's issuance of a writ of habeas corpus."

512 U.S. at 486–87 (footnote omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)

("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief

sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct

leading to conviction or internal prison proceedings) — if success in that action would

necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

"Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider

whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his

conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can

demonstrate that the conviction or sentence has already been invalidated."  *Heck*, 512 U.S. at

487.

With that in mind, we address each of Jackson's constitutional claims in turn.

1.      **Fourth Amendment Claim**

Jackson contends that Detective Rosen violated his Fourth Amendment rights.  The

Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers,

and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  It also states

that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized."  *Id.*

"[T]he Fourth Amendment is enforceable against the States through the Fourteenth

Amendment."  *Camera v. Mun. Ct. of San Francisco*, 387 U.S. 523, 528 (1967).

Although it is not entirely clear from the complaint, Jackson appears to argue that

Detective Rosen violated his Fourth Amendment rights because the date listed in either the arrest

warrant or the criminal complaint — Jackson uses those terms interchangeably — is not

mentioned in the underlying affidavit.  In other words, Jackson suggests that because the

affidavit lists "June 1, 2018," not "May 15, 2018," the affidavit does not support the warrant, and

therefore, his warrant is invalid, and he was arrested without probable cause.[4]  *See Berg v.*

*County of Allegheny*, 219 F.3d 261, 270 (3d Cir. 2000) ("[T]he Supreme Court has made clear

that a mistakenly issued warrant cannot provide probable cause for an arrest.").

Jackson's allegations do not give rise to a Fourth Amendment violation.  He has alleged

only that Detective Rosen arrested him on a warrant that had a date that was different from the

supporting affidavit.  That on its own does not give rise to the inference that the warrant was

erroneously issued and not supported by probable cause.[5]  *See United States v. Carter*, 756 F.2d

310, 313 (3d Cir. 1985) (explaining that a "mere inaccuracy in setting the date of an offense in a

criminal complaint would not appear to be a material or critical variance," and holding that

because the "incorrect date here did not negate any elements of the charged offence" and the

---

[4] Because the basis for the claim is not stated with any specificity, it is unclear whether it is barred by *Heck*. *See Fields v. Venable*, 674 F. App'x 225, 229 (3d Cir. 2016) (claim based on improperly issued parole detainer arrest warrant and resulting illegal search finding drug paraphernalia were *Heck* barred because, if evidence was suppressed, the invalidity of plaintiff's possession-based parole revocation would necessarily be implied); *Rosembert v. Borough of East Landsdowne*, 14 F. Supp. 3d 631, 640 (E.D. Pa. 2014) ("*Heck* does not bar a claim where a plaintiff seeks damages for the defendant's use of improper procedures, so long as the validity of a plaintiff's conviction is not called into question."); *but see Williams v. Schario*, 93 F.3d 527, 528–29 (8th Cir. 1996) ("[A] guilty plea forecloses a section 1983 claim for arrest without probable cause.").

[5] "[T]he same probable-cause standards [a]re applicable to federal and state warrants under the Fourth and Fourteenth Amendments."  *Whiteley v. Warden*, 401 U.S. 560, 564 n.6 (1971).

plaintiff had not proven that "the misstatement was made intentionally or with reckless disregard for the truth. . . it did not affect the validity of the charge"); *cf. Kis v. County of Schuylkill*, 866 F.Supp. 1462, 1470–71 (E.D. Pa. 1994) (holding that the "misspelling of plaintiff's name has no bearing on the facial validity of the arrest warrant" because the plaintiff never "alleged with any seriousness that he was in fact not the person for whom the warrant was meant, and he admits that the address on the warrant is his own").

Because Jackson has not alleged facts which tend to show that the arrest warrant was invalid, that it was erroneously issued, or that he was otherwise arrested without probable cause, this claim is dismissed without prejudice, and Jackson will be given an opportunity to file an amended complaint that cures the defects identified in his claim.

### 2.    *Fifth Amendment Claim*

Jackson also mentions the Fifth Amendment as a basis for his claims and appears to allege that Rosen violated his Fifth Amendment rights on June 1, 2018, when he continued questioning Jackson after Jackson requested counsel and stated that he wished to remain silent. (Doc. No. 2 at p. 13.)  In other words, Jackson seems to contend that Rosen failed to abide by the prophylactic *Miranda* procedures.[6]  While the Fifth Amendment, applicable to the states through the Fourteenth Amendment, does not contain an explicit right to counsel like the Sixth Amendment, it does state that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V  To protect this right, the Supreme Court has imposed

---

[6] This type of claim is not necessarily subject to the *Heck* bar, *see e.g., Walke v. Cullen*, Civ. A. No. 05-6665, 2009 WL 1416076, at *4 (E.D. Pa. May 15, 2009), *aff'd*, 491 F. App'x 273 (3d Cir. 2012) ("As *Heck* and *Gibson* [*v. Super. of N.J. Dept. of Law and Pub. Safety*, 411 F.3d 427 (3d Cir. 2005)] make clear, however, the mere fact that a § 1983 claim concerns the legitimacy of evidence introduced at the plaintiff's criminal trial does not mean that the claim is barred.  The test is whether a successful claim would "necessarily" demonstrate the invalidity of the plaintiff's conviction, and this requires a "fact-based" inquiry into whether evidence that might be called into question by a successful § 1983 suit might nonetheless be admissible."); *see also Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) (explaining that violations of *Miranda* procedures "do not amount to violations of the Constitution itself").

"procedural safeguards," including *Miranda* warnings and the "right to counsel" during custodial interrogations. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

The Third Circuit has held that "a plaintiff may not base a § 1983 claim on the mere fact that the police questioned her in custody without providing *Miranda* warnings when there is no claim that the plaintiff's answers were used against her at trial." *Renda v. King*, 347 F.3d 550, 552 (3d Cir. 2003) (noting that the Supreme Court's decision in *Chavez v. Martinez*, 538 U.S. 760 (2003) reaffirmed the Third Circuit's holding in *Giuffre v. Bissell*, 31 F.3d 1241 (3d Cir. 1994) to the same effect). Rather, it is the "use of coerced statements during a criminal trial . . . that violates the Constitution." *Id.* at 559.

Jackson does not allege that the information he gave to Detective Rosen under questioning after he invoked his right to remain silent was used against him, and considering that he pled guilty to the criminal charges, the claim is not plausible as alleged. Moreover, Jackson's allegation of a constitutional violation is wholly conclusory since he does not describe what self-incriminating information he gave Detective Rosen or how his right against self-incrimination was violated. However, because the Court cannot say at this time that Jackson could never assert a constitutional violation based on Rosen's questioning, the claim is dismissed without prejudice and Jackson will be given an opportunity to file an amended complaint if he is able to cure the defects the Court has identified in his claim.

### 3. Sixth Amendment Claim

Under the Sixth Amendment, "[i]n all prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[T]he Fourteenth Amendment makes the Sixth Amendment's guarantee of right to counsel obligatory upon the States." *Pointer v. Texas*, 380 U.S. 400, 401 (1965). The right does not attach, however, until

criminal proceedings have been initiated against the defendant.  *Kirby v. Illinois*, 406 U.S. 682, 688 (1972).  Criminal proceedings include the "formal charge, preliminary hearing, indictment, information, or arraignment."  *Id.* at 688–89.  Although Jackson alleges that he asked for an attorney during two meetings with Detective Rosen, he has not alleged that he asked for an attorney, and was denied that right, after criminal proceedings were initiated on July 21, 2018.  Therefore, this claim will also be dismissed without prejudice, and Jackson will be given an opportunity to file an amended complaint if he is able to cure the defects identified in his claim.

### 4.    *Ninth Amendment Claim*

Next, Jackson claims that Detective Rosen's actions violate the Ninth Amendment, which states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  However, Jackson asserts no facts that would implicate this constitutional provision.  In addition, "the Ninth Amendment does not independently provide a source of individual constitutional rights."  *Perry v. Lacawanna Cnty Children & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009).  Therefore, Jackson's Ninth Amendment claim is dismissed with prejudice under § 1915(e)(2)(B)(ii).

### 5.    *Fourteenth Amendment Claims*

Last, Jackson mentions the Fourteenth Amendment as a basis for his claims.  Although it is not entirely clear, Jackson appears to raise two constitutional claims under this Amendment: one under a selective prosecution/equal protection theory, and one for violation of procedural due process.[7]

First, Jackson alleges race discrimination in Rosen's decision to arrest him, noting that Lassitter, a white male who was also allegedly involved in drug trafficking, was not arrested.

---

[7] These claims are in addition to Jackson's claims under the Fourth, Fifth, and Sixth Amendments, which, as mentioned above, are enforceable against the States through the Fourteenth Amendment.

*See Virgin Islands v. Harrigan*, 791 F.2d 34, 36 (3d Cir. 1986) ("If a prosecutor's decisions on whom to prosecute are made on a discriminatory basis with an improper motive, the prosecutor's actions may constitute a violation of the constitutional guarantee of equal protection.") (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886)).  This claim falls within the *Heck* bar.  To demonstrate that selective prosecution is a violation of equal protection, a § 1983 plaintiff must allege that persons similarly situated were not prosecuted and that the prosecution decisions were made on the basis of an unjustifiable standard, *see Wayte v. United States*, 470 U.S. 598, 608–09 (1985), "such as race, religion, or other arbitrary classification," *Oyler v. Boles*, 368 U.S. 448, 456 (1962), or to prevent the defendant's exercise of a fundamental right, *see United States v. Goodwin*, 457 U.S. 368, 372–74 (1982).

Selective prosecution is a defense to a criminal conviction in Pennsylvania.  *See Shahid v. Borough of Eddystone*, No. 11-2501, 2012 WL 1858954, at *5 n.9 (E.D. Pa. May 22, 2012), *aff'd*, 503 F. App'x 184 (3d Cir. 2012).  Therefore, Jackson's selective prosecution claim was necessarily resolved by his conviction.  *See id.*  "Because a successful selective prosecution civil claim would render a criminal conviction invalid," Jackson is barred by *Heck* from raising that claim until his underlying conviction is reversed, vacated or otherwise impugned.  *See id.* (citing *Kramer v. Village of N. Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004)); *Kinder v. Marinez*, No. 19-2692, 2019 WL 5445924, at *2 (E.D. Pa. Oct. 23, 2019) (citing *Nesblett v. Concord Fed. Prob.*, No. 13-515, 2014 WL 808848, at *4 (D.N.H. Feb. 28, 2014) (collecting cases and concluding that *Heck* barred selective prosecution racial bias claim)).  Accordingly, the selective prosecution claim must be dismissed without prejudice until such time as Jackson's conviction is vacated, overturned or otherwise impugned.

As for Jackson's due process claim, it is not entirely clear on what basis Jackson alleges that he was denied due process.  In his discussion of due process, Jackson refences multiple state procedural rules that were allegedly violated during his arrest, but violation of a state procedural rule does not necessarily equate to a violation of federal constitutional law.  *See e.g., Barclay v. Florida*, 463 U.S. 939, 951 n.8 & 956 (1983) (finding that the trial court's consideration of the plaintiff's "criminal record as an aggravating circumstance was improper as a matter of state law," but a "mere error of state law is not a denial of due process" (quotations marks omitted)); *Hodge v. Jones*, 31 F.3d 157, 168 (4th Cir. 1994) ("[A] State's violation of its own laws or procedural rules, creating rights beyond those guaranteed by the constitution, cannot support a federal due process claim"); *Adewale v. Whalen*, 21 F. Supp. 2d 1006, 1015 (D. Minn. 1998) (violation of state procedural rule does not constitute a violation of federal constitutional law).

In addition, Jackson has not alleged facts which tend to show that Detective Rosen violated the procedural rules that Jackson identifies.  First, Jackson references Rules 517 and 519, which require that an individual arrested with or without a warrant be brought before a judge for bail without "unnecessary delay."  Pa. R. Crim. P. 517 (discussing procedures for bringing one arrested on a warrant before a judge for bail without "unnecessary delay") & 519 (discussing similar procedures for bringing one arrested without a warrant before a judge for bail).[8]  (Doc. No. 2 at 12.)  But Jackson has not alleged a plausible violation of these rules because the record shows that Jackson received a bail hearing the day that he was arrested.[9]  *See*

---

[8] On the same grounds, Jackson also references Rule 9112, but that rule does not exist.  We assume that Jackson meant instead, to reference 18 Pa. Stat. & Con. Stat. § 9112, which requires "fingerprinting of all accused for a felony, misdemeanor, or summary offense." However, Jackson has not explained how he was injured by the Township's alleged decision not to fingerprint him, let alone that this failure amounted to a violation of his due process rights.

[9] Jackson also alleges that Rosen lied to the judge about finding drugs and that the District Attorney presented false evidence.  (Doc. No. 2 at 14.)  However, claims asserting that a litigant's conviction is based on fabricated evidence are barred by *Heck*.  *See McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (*Heck* applied to litigant's claims "asserting that fabricated evidence was used to pursue a criminal judgment").  Thus, this claim must

*Commonwealth v. Jackson*, CP-23CR-6588-2018 (Ct. Comm. P. Delaware). Jackson also references Rules 504(4)(a) and (b), which require that criminal complaints contain "the date when the offense is alleged to have been committed." 234 Pa. Code § 504(4). Jackson's complaint alleges that his criminal complaint listed the date of his offense as May 15, 2018, but he has not alleged that this date was incorrect or that the underlying offense did not occur.[10]

Because Jackson has not alleged a plausible violation of his due process rights, that claim is also dismissed without prejudice. Jackson will be given an opportunity to file an amended complaint if he is able to cure the defects related to his due process claim.

### C. *Federal Statutory Claims*

In addition to his constitutional claims, Jackson cites three federal statutes as bases for his complaint. First, he alleges discrimination under 31 U.S.C. § 6711. (Doc. No. 2 at p. 3.) That statute provides that "[n]o person in the United States shall be excluded from participating in, be denied the benefits of, or be subject to discrimination under, a program or activity of a unit of general local government because of race, color, national origin, or sex if the government receives a payment under" Chapter 67 of Title 31. That chapter provides payments to local governments to carry out programs related to education to prevent crime, substance abuse treatment to prevent crime, and job programs to prevent crime. *See* 31 U.S.C. § 6701(a)(2). Although Jackson alleges discrimination and selective prosecution on the basis of race, it is not clear how those allegations relate to the programs identified in § 6701 or amount to a violation of § 6711. *Cf. id.* § 6716(b) (requiring exhaustion of administrative remedies before a claim under

---

be dismissed without prejudice until such time as Jackson's conviction is vacated, overturned or otherwise impugned.

[10] Jackson takes issue with the fact that this date was not also listed in the underlying affidavit. However, that defect does not implicate Rule 504(4), and even if it did, that violation on its own does not amount to a federal constitutional violation. As discussed above, the Supreme Court has held that a charge is not constitutionally invalid merely because it fails to state the correct date of the offense. *See Carter*, 756 F.2d at 313.

§ 6711 may be filed in federal court).  To the extent that Jackson attempts to allege a cause of action against Detective Rosen under § 6711, the claim is dismissed with prejudice.

Second, Jackson alleges that Rosen was negligent in violation of 51 U.S.C. § 20137. (Doc. No. 2 at p. 3.)  That statute discusses the remedies available to a person injured by "the negligent or wrongful act or omission of any physician, dentist, nurse, pharmacist, or paramedical or other supporting personnel . . . while acting within the scope of such person's duties or employment."  51 U.S.C. § 20137(a).  Jackson has not explained how his interrogation and arrest give rise to a claim for medical malpractice or negligence under § 20137, and therefore, this claim fails as well and is dismissed with prejudice.

Last, Jackson cites 18 U.S.C. § 2255.  (*Id.*)  That statute provides civil remedies for any person who, while a minor, was a victim of a forced labor crime or sexual abuse crime.  Like Jackson's claim under § 20137, nothing in the complaint explains how this statute is relevant to Detective Rosen's alleged actions.  To the extent that Jackson attempts to allege a cause of action under § 2255, the claim is also not plausible and is dismissed.  Accordingly, all federal statutory claims are dismissed with prejudice under § 1915(e)(2)(B)(ii).

### D.    *Official Capacity Claims*

Jackson has sued Rosen in both his individual and official capacities.  Official capacity claims against municipal officials such as police officers are indistinguishable from claims against the municipality that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell.*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy this pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Because Jackson has failed to allege any policy or custom of Marple Township that violated his rights, his official capacity claims against Rosen are not plausible and are dismissed without prejudice.

### E.    State Law Claims

Having dismissed all of Jackson's federal law claims, the Court will not exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."). We must therefore determine whether we have an independent basis for asserting subject matter jurisdiction under 28 U.S.C. § 1332(a).

Section 1332(a) grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." The statute requires "complete diversity between all plaintiffs and all defendants, even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, no plaintiff [may] be a citizen of the same state as any defendant." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quotation marks and footnotes omitted). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.

15

*See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).

As the plaintiff, it is Jackson's burden to establish diversity of citizenship.  He has failed to assert where Defendant Rosen is domiciled and, as Rosen is alleged to be a Marple Township police detective, it appears likely that complete diversity is lacking.  Accordingly, to the extent that Jackson's complaint raises state law claims, he has failed to meet his burden to demonstrate that the court has subject matter jurisdiction.  Accordingly, those claims are also dismissed without prejudice.

## IV.	Conclusion

For the reasons discussed above, Jackson's complaint is dismissed in part with prejudice and in part without prejudice.  His request to withdraw his guilty plea and seek a new trial, his Ninth Amendment claim, and his federal statutory claims are dismissed with prejudice.  All other federal constitutional claims are dismissed without prejudice.  Jackson may reassert any claim barred by *Heck* in a new civil action if his conviction should ever be overturned, vacated or otherwise impugned.  Jackson may file an amended complaint in this action if he is able to cure the defects the Court has found in his claims that are not dismissed with prejudice or dismissed due to the *Heck* bar.  His state law claims are dismissed without prejudice for want of subject matter jurisdiction.  Jackson may file an amended complaint in this action if he is able to show that the Court has complete diversity.  He is also free to reassert his state law claims in the Pennsylvania courts.[11]

An appropriate Order follows.

---

[11] The Court expresses no opinion on merits of the state law claims.