**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **THEODORE JACKSON**, **JR.**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-2842-KSM** |
| **EDWARD ROSEN,** | |
| Defendant. | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                    **August 27, 2020**

  *Pro se* Plaintiff Theodore Jackson, Jr., a prisoner incarcerated at SCI-Phoenix, has filed

an amended complaint asserting federal constitutional law claims under 42 U.S.C. § 1983.  (Doc.

Nos. 7, 8.)  In his original complaint, filed on May 21, 2020, Jackson sued only one defendant,

Edward Rosen, who was identified as a detective with the Marple Township Police Department

and the Delaware County Criminal Investigations Division ("C.I.D.").  (Doc. No. 2.)  In a prior

Memorandum and Order filed on June 26, 2020 (the "June Memorandum"), the Court dismissed

the complaint in part with prejudice and in part without prejudice, and gave Jackson leave to

amend if he was able to cure the defects identified by the Court.  (*See* Doc. Nos. 4, 5.)  On July

27, 2020, Jackson filed his amended complaint, which names two new defendants, in addition to

Rosen: (1) Nicholas Coffin, who is also identified as an officer with the Marple Township Police

Department, and (2) the Marple Township Police Department.  Defendants Rosen and Coffin are

each named in their individual and official capacities.

For the reasons discussed below, the Court will dismiss all of the claims brought against the Police Department, along with certain claims brought against Defendants Rosen and Coffin. The remaining claims will be served on Defendants Rosen and Coffin for a responsive pleading.

## I.    *Factual Allegations*

The allegations in the amended complaint are similar to those asserted in the original complaint.[1]  Taking those allegations as true, the Court finds as follows.

On June 1, 2018, Jackson was arrested on multiple drug-related charges.  (Doc. No. 7 at 12.[2])  Jackson claims the arrest was made at gunpoint by unidentified "DelCo C.I.D." officers and that the officers slammed him to the ground face-first, handcuffed him, and placed a knee on his back and neck for approximately two to three minutes.  (*Id.*)  Although Jackson does not identify any of the officers by name, he later refers to Defendant Rosen as the "arresting officer," and Rosen drafted the accompanying arrest report.  (*Id.* at 12, 19.)  Jackson asserts that the arrest was made pursuant to an "arrest warrant, body warrant & search warrant issued by Marple Magistrate Judge Lay also for a warrant from state parole of commit and detain."  (*Id.* at 12.) Although Jackson does not attach a copy of the arrest warrant to the amended complaint, Rosen's arrest report — which is attached — lists May 15, 2018 as the "crime date."  (*Id.* at 19.)

Immediately after the arrest, Rosen executed a search warrant on an apartment in Alden, Pennsylvania and found drug contraband.[3]  (*Id.*)  Jackson claims that the search was improper

---

[1] Although many of the underlying facts remain the same, Jackson asserts claims for excessive force for the first time in the amended complaint.  The Court will permit these new claims, but we note that there were absolutely no allegations of the officers slamming him to the ground face-first, handcuffing him, and placing a knee on his back and neck for approximately two to three minutes until the amended complaint was filed on July 27, 2020.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

[3] The amended complaint states that the search was conducted while Rosen and Jackson were "en route" to the police department, but the arrest report attached identifies the Alden apartment as the "arrest location."  (Doc. No. 7 at 12, 19.)

because the search warrant relied on false representations given by Rosen in the supporting affidavit — namely that Jackson had agreed to sell heroin to Rosen and a confidential informant, and that Jackson owned the Alden apartment and likely stored drugs, records of sale, and related items there.[4]  (*Id.* at 12–13.)  According to Jackson, the apartment was actually owned by Greg Lassiter, a white male, who was present for the search, admitted to having contraband, and knew about the contraband found by the officers.  (*Id.* at 12.)  Lassiter was not arrested.  (*Id.*)

After the search, Rosen took Jackson to the Marple Township Police Department and began questioning him.  (*Id.* at 13.)  During the interrogation, Jackson requested counsel and stated that he wished to remain silent, but Rosen continued interrogating him.  (*Id.*)  Rosen allegedly told Jackson he did not need a lawyer because they were "just talking" and promised not to run a parole detainer search and to let Jackson go if he answered his questions.  (*Id.*)  Jackson claims that Rosen then asked him whether he lived at the Alden apartment, to which Jackson says that he responded, "No I only slept there a few times."  (*Id.*)  After that, Jackson refused to answer any more questions and asked Rosen if he was going to "book" Jackson.  (*Id.*)  Rosen responded that booking Jackson was a "problem" because "state parole will find out" that Jackson had been arrested, and Rosen would have to hold Jackson at the Police Department instead of using him as an informant.  (*Id.*)

After this exchange, Rosen spoke with a superior before returning and telling Jackson that he was being released.  (*Id.* at 14.)  Rosen qualified, however, that Jackson was not to "leave

---

[4] In this portion of the amended complaint, Jackson states that Rosen misrepresented that Jackson was *not* the owner of the apartment, *never* stated Jackson committed crimes at the apartment, and did *not* state or confirm that Jackson was a drug dealer.  (Doc. No. 7 at 12–13 (emphasis added).)  It is unclear whether Jackson means that Rosen made these negative representations or that the positive representations of these facts were false.  However Rosen's underlying affidavit states these representations in the affirmative, i.e., that Jackson was the owner of the apartment, that he did commit crimes there, and that he was a drug dealer.  (*Id.* at 18.)  The Court will construe this allegation liberally to read that Rosen misrepresented his affirmative assertions to obtain the search warrant.

Del[aware] Co[unty]" and was expected to "answer [Rosen's] calls . . . and meet up when you['re] told." (*Id.*) Skeptical, Jackson asked whether Rosen was "being crafty," and Rosen again explained that he could not "follow protocol and procedures"— i.e., see "a D.A. to ok [him using Jackson as an informant] and then . . . see a judge to ok it"— because Jackson "has warrants and is on state parole." (*Id.* at 14.) Rosen then released Jackson. He did not file formal charges, and Jackson never saw a magistrate judge before being released. (*Id.*)

Jackson asserts that from that date until July 20, 2018, Rosen used "physical force, coercion, fear, and intimidation" to force Jackson into acting as his confidential informant. (*Id.* at 15.) Rosen frequently ordered Jackson to meet him at a catholic church in Clifton Heights, Pennsylvania, or behind a McDonalds in Darby, Pennsylvania. (*Id.* at 14.) At one point in late June 2018, Rosen also took Jackson to meet with Delaware County District Attorney Kat Copeland. (*Id.* at 14–15 (referring to "Kat Kopeland").) Copeland gave Jackson papers to sign in order that law enforcement could listen to Jackson's phone calls. Jackson asked for a lawyer to review the papers. (*Id.* at 15.) Copeland allegedly told Jackson he could "sign it and go home or don't and you go to jail." (*Id.*) Jackson signed the papers. (*Id.*)

A few weeks later, on July 20, 2018, Jackson had a friend drop him off near the catholic church in Clifton Heights for another meeting with Rosen. (*Id.*) When he arrived, Rosen, Coffin, and an unidentified Bucks County detective arrested Jackson for a second time — apparently on the same arrest warrant that supported the initial June 1 arrest. (*Id.*) Jackson alleges that the Bucks County detective grabbed him by the arm and shoved him into the side of a vehicle, splitting his lip open. (*Id.*) At the same time, Rosen drew his weapon, while Coffin placed Jackson under arrest. (*Id.* at 15–16.) The unnamed detective then asked Jackson about a heroin deal that occurred in Bucks County, to which Jackson denied any knowledge. (*Id.* at 16.)

All three officers shoved Jackson back and forth.  (*Id.*)  Jackson asked for an attorney and invoked his right to remain silent, but Rosen allegedly told Jackson "this ain't a courtroom and you not getting a lawyer" before assaulting Jackson again.  (*Id.*)  Jackson alleges that when they stopped pushing him, Rosen gave Jackson a statement to tell the Bucks County detective, and in fear of another assault, Jackson complied.  (*Id.*)  The detective recorded Jackson as he gave the statement.  (*Id.*)  Jackson alleges that twenty-three months later (around June 2020), he was charged in Bucks County for the heroin deal because of the coerced confession.  (*Id.*)  After the second arrest Jackson was again transported to the Marple Township Police Department, where Rosen allegedly denied him food and water for 14 to 16 hours.  (*Id.*)

A review of publicly available records[5] shows that Jackson was charged with multiple counts of manufacture, delivery or possession of controlled substances with intent to deliver and other drug related offenses that, according to the criminal docket, occurred on May 15, 2018 and June 1, 2018.  *Commonwealth v. Jackson*, Docket No. CP-23-CR-6588-2018 (Ct. Comm. P. Del. Cty.).  Jackson was arraigned on July 21, 2018 and held on a cash bail of $250,000.  *Id.*  On July 10, 2019, Jackson entered a non-negotiated guilty plea to a violation of felony manufacture, delivery, or possession with intent to manufacture or deliver, as well as misdemeanor violations of use and possession of drug paraphernalia and criminal use of communication facility.  *Id.*  Jackson was sentenced to not less than five years and not more than fourteen years imprisonment for the felony violation.  *Id.*  The records indicate that Jackson did not appeal his conviction or sentence.  *Id.*

---

[5] In deciding whether a complaint must be dismissed for failure to state a claim upon which relief may be granted, such as when conducting a screening under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court may consider matters of public record.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Castro-Mota v. Smithson*, Civ. A. No. 20-940, 2020 WL 3104775, at *1 (E.D. Pa. June 11, 2020).

Several documents were also attached to Jackson's amended complaint:[6] (1) a witness statement with an indecipherable signature, attesting to Jackson being assaulted by unidentified plain clothes police officers during the second arrest on July 21 (Doc. No. 7 at 17); (2) an affidavit of probable cause signed by Rosen to conduct a search of Jackson's person and the apartment in Alden, Pennsylvania (*id.* at 18); (3) an arrest report signed by Rosen indicating that Jackson was arrested on June 1, 2018 at the Alden address for a drug crime committed on May 15, 2018 (*id.* at 19); and (4) an order from the Pennsylvania parole authorities to recommit Jackson to serve the balance of his original prison term (*id.* at 20).

## II.    *Standard of Review*

Because the Court granted Jackson leave to proceed *in forma pauperis* in the June Memorandum, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to screen the amended complaint and dismiss any counts that fail to state a claim upon which relief can be granted.  Our review is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the amended complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  The Court must accept as true all factual allegations in the amended complaint and all reasonable inferences that can be drawn from those allegations.  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017).  Conclusory allegations do not suffice.  *Id.*  However, because Jackson is proceeding *pro se*, the Court liberally construes the allegations in the amended complaint.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[6] In addition to the allegations in the amended complaint and matters of public record, the court may also consider documents attached to the amended complaint.  *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011).

### III.    *Discussion*

Jackson cites 42 U.S.C. § 1983 as the basis for his claims.  That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Jackson alleges that during the relevant period, Rosen was employed by the Marple Township Police Department and the Delaware County C.I.D.  (Doc. No. 7 at 4.)  Detective Coffin is also identified as an employee of the Marple Township Police Department.  (*Id.* at 3.) Jackson sues both men in their official and individual capacities.  Citing the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, Jackson contends that Rosen, Coffin, and the Marple Township Police Department arrested Jackson without probable cause, used excessive force during the initial arrest on June 1 and the second arrest on July 21, violated his Fifth Amendment *Miranda* rights, denied him his Sixth Amendment right to counsel, subjected him to cruel and unusual punishment, violated his rights to procedural and substantive due process, and unlawfully discriminated against him on the basis of race.  (*See generally* Doc. No. 7.)  For these violations, he seeks $1.5 million dollars and a public apology from Rosen and the Marple Township Police Department.  (*Id.* at 5.)

We address Jackson's claims against the Police Department and his official capacity claims against Rosen and Coffin before turning to the individual capacity claims.

### A.     Claims Against Marple Township Police Department

Following the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), lower courts have concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See e.g.*, *Johnson v. City of Erie*, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *Id.*; *see also Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability." (citing *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 n.7 (3d Cir. 1988))); *Martin v. Red Lion Police Dep't.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Hadesty v. Rush Twp. Police Dep't*, Civ. A. No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016).  Therefore, the Marple Township Police Department is not a proper defendant in this case and is dismissed.

### B.     Official Capacity Claims Against Rosen and Coffin

In his original complaint Jackson sued Defendant Rosen in both his individual and official capacities.  In the June Memorandum, the Court dismissed the official capacity claim but gave Jackson an opportunity to amend.  (Doc. No. 4 at 14–15.)  Although Jackson continues to assert an official capacity claim against Rosen, and also against Coffin, he has not cured the defects identified in the June Memorandum.

As previously stated, official capacity claims against municipal officials such as police officers are indistinguishable from claims against the municipality that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally

represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation.  *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).  The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard.  *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

The amended complaint fails to identify any policy or custom that caused Jackson's constitutional injuries.  Therefore, his official capacity claims against Rosen and Coffin are not plausible and are dismissed under § 1915(e)(2)(B)(ii).  Having afforded Jackson a prior opportunity to cure this defect, and it appearing that further opportunity to amend would be futile, the official capacity claims will be dismissed with prejudice.

### C.  *Individual Capacity Claims Against Rosen and Coffin*

Jackson alleges that in their individual capacities Defendants Rosen and Coffin violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the Constitution.[7]  We address each claim in turn.

### 1.  *Fourth Amendment Claims*

The Fourth Amendment, applicable to the states through the Fourteenth Amendment, states that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

---

[7] Jackson also brings claims for cruel and unusual punishment under the Eighth Amendment, but, as discussed below, Jackson's Eighth Amendment claims are more properly analyzed under other Amendments.

particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.  Jackson argues that Rosen and Coffin violated his Fourth Amendment rights because: (1) his arrest warrant was invalid and not supported by probable cause; (2) the search warrant for the Alden apartment was invalid because Rosen's underlying affidavit included false statements; and (3) Rosen and Coffin used excessive force to arrest Jackson both on June 1 and on July 21.

### i.    *Arrest Warrant Not Supported by Probable Cause*

In the original complaint, Jackson alleged that his criminal complaint and arrest warrant were invalid because they identify May 15, 2018 as the offense date, but that date was not mentioned in, nor supported by, the underlying affidavit.  Jackson reasoned that because the arrest warrant was invalid, he was arrested without probable cause in violation of the Fourth Amendment.  Jackson provided little to no explanation for this claim, and we dismissed it without prejudice on the grounds that Jackson "alleged only that Detective Rosen arrested him on a warrant that had a date that was different from the supporting affidavit" and that fact "on its own does not give rise to the inference that the warrant was erroneously issued and not supported by probable cause."  (Doc. No. 4 at p. 7.)

In the amended complaint, Jackson provides slightly more information, but still fails to state a plausible Fourth Amendment violation.  Jackson alleges that his "criminal complaint is not supported by [the] arrest warrant" because the "time, dates and location do not match."  Jackson does not attach his criminal complaint or his arrest warrant to the amended complaint.  But his allegations and the available documents show that (1) Jackson was arrested on June 1 on a warrant that identified drug offenses occurring on May 15; (2) either immediately after or during that initial arrest on June 1, Rosen discovered additional drug contraband; and (3) Jackson

was rearrested on July 21, and charged with both the May 15 offenses identified in the arrest

warrant and the June 1 offenses.  Jackson has not plausibly alleged that the date in the warrant

(May 15) is contradicted by the dates identified in the criminal complaint (May 15 and June 1).

Even assuming that the documents and the dates that they identify contradicted each other,

Jackson's claim would still fail because Jackson pled guilty.  *See Ross v. Donkocik*, 60 F. App'x

409, 410 n.1 (3d Cir. 2003) (concluding that the defendant's "guilty plea negates [his] current

argument that [the officers] did not have probable cause to arrest him" (citing *Heck v. Humphrey*,

512 U.S. 477, 486–87 (1994))); *Bandy v. Hill*, Civ A. No. 18-0425, 2019 WL 1259155, at *7

(E.D. Pa. Mar. 18, 2019)  ("[H]aving pled guilty to the crime . . . Plaintiff cannot now claim that

there was no probable cause.").

Because Jackson has not stated a plausible Fourth Amendment violation, this claim will

be dismissed.  Having afforded Jackson a prior opportunity to cure the defects in this claim, and

it appearing that further opportunity to amend would be futile, this claim will be dismissed with

prejudice.

### ii.    *Misrepresentations in Search Warrant Affidavit*

Jackson also takes issue with the search warrant that supported Rosen's search of the

Alden apartment.  To the extent that Jackson's Fourth Amendment claim is based on his

assertion that Rosen misrepresented facts in the search warrant affidavit, this claim is not

necessarily barred by *Heck*.  *See Heck*, 512 U.S. at 487 n.7 (stating "a suit for damages

attributable to an allegedly unreasonable search may lie even if the challenged search produced

evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-

outstanding conviction").  Construing the allegations liberally and in the light most favorable to

Jackson, this claim is sufficient for § 1915 screening purposes and will be served on Rosen for a

responsive pleading.  However, because there is no assertion that Coffin was involved in executing the search warrant, the claim is not plausible to the extent it is asserted against him and will be dismissed.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable).

### iii.    *Excessive Force*

In his amended complaint, Jackson brings new claims for excessive force.  Excessive force claims arising in the context of an arrest or investigatory stop are properly characterized as invoking the protections of the Fourth Amendment, and a defendant's conduct is analyzed under an objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see also Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007).  Jackson alleges that during his first arrest on June 1, "Delco C.I.D." members handcuffed him, slammed him to the ground face-first, and placed a knee on his back and neck for approximately two to three minutes.  Jackson does not name the officers involved in this altercation, but he does identify Rosen as the "arresting officer" and later states that Rosen is a member of "C.I.D."  Construing these allegations liberally and in the light most favorable to Jackson, they sufficiently state an excessive force claim against Rosen for § 1915 screening purposes.  This claim will be served on Rosen for a responsive pleading.  However, because there is no assertion that Coffin was involved in the altercation or present for the June 1 arrest, the claim is not plausible to the extent it is asserted against him and will be dismissed.  *See Rode*, 845 F.2d at 1207.

Jackson also asserts that during his second arrest an unnamed Bucks County detective grabbed him by the arm and shoved him into the side of a vehicle, splitting his lip, Rosen drew his weapon, and Coffin placed him under arrest.  (Doc. No. 7 at 15–16.)  Rosen and Coffin,

along with the Bucks County detective, then shoved Jackson back and forth until Jackson confessed to distributing heroin in Bucks County.  (*Id.*)  The allegation of post-arrest shoving is sufficient to allege an excessive force claim for purposes of § 1915 screening and will be served on Rosen and Coffin for a responsive pleading.[8]

### 2.       *Fifth Amendment Claim*

The Fifth Amendment, applicable to the states through the Fourteenth Amendment, states that no person "shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.  To protect this right of the utmost sanctity, the Supreme Court has imposed "procedural safeguards," including *Miranda* warnings, the right to "remain silent," and the "right to counsel" during custodial interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  These safeguards ensure that statements given by a defendant during interrogation are not coerced.

As we explained in the June Memorandum, "a plaintiff may not base a § 1983 claim on the mere fact that the police questioned her in custody without providing *Miranda* warnings when there is no claim that the plaintiff's answers were used against her at trial."  *Renda v. King*, 347 F.3d 550, 552 (3d Cir. 2003); *see also Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994) (explaining that violations of *Miranda* procedures "do not amount to violations of the Constitution itself").  Instead, it is the "use of coerced statements during a criminal trial . . . that violates the Constitution."  *Renda*, 347 F.3d at 559 (emphasizing that the coerced statements must be used "during a criminal trial, and not in obtaining an indictment").  Jackson's original

---

[8] Jackson also claims that this conduct amounts to cruel and unusual punishment in violation of the Eighth Amendment.  Because Jackson was not a convicted person at the time the incident occurred, this claim is properly analyzed under the Fourth Amendment, not the Eighth Amendment.  *See Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("[T]he Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until after sentence and conviction.").  Jackson's Eighth Amendment claim based on this conduct is dismissed with prejudice.

Fifth Amendment claim was dismissed because he had not alleged that the information he provided to Rosen under questioning was used against him at trial, and given that Jackson pled guilty to the criminal charges, it was dubious that he could do so.  *Id.*

Jackson once again argues that Rosen and Coffin violated his Fifth Amendment rights, alleging that they failed to abide by the prophylactic *Miranda* procedures when: (1) Rosen ignored Jackson's request to remain silent and for counsel during the interrogation following the initial arrest on June 1, 2018, (2) Rosen rejected Jackson's request for counsel during their meeting with the District Attorney, and (3) Rosen and Coffin denied Jackson's request for counsel and to remain silent during his second arrest on July 28, 2018.  (*Id.*)  We address each allegation in turn.

### i.      The First Arrest – June 1, 2018

First, with respect to the interrogation after the initial arrest, Jackson alleges that Rosen continued questioning him after he requested counsel and invoked his right to remain silent. During that questioning, Rosen asked Jackson about the Alden apartment, and Jackson told him that he "slept there a few times."  Rosen "later testifie[d]" that Jackson told him he sometimes stays at the Alden apartment.  We find that this allegation, on its own, does not plausibly suggest a Fifth Amendment violation.  As explained above, Jackson must allege that the coerced statements were used against him *at trial*, and it is not enough that Rosen may have testified about those statements at some future, unidentified time.  Jackson has not alleged that Rosen's testimony was given at trial, or even that Jackson's case went to trial — and such an allegation would be implausible because Jackson pled guilty.  *See Rodenbaugh v. Santiago*, Civ. A. No. 16-2158, 2017 WL 194238, at *7 (E.D. Pa. Jan. 18, 2017) (finding *pro se* plaintiff failed to state a claim for violation of her Fifth Amendment rights because she "has not (and cannot) claim that

14

any statement she made to Adduddell was used against her at trial because she pleaded guilty at her arraignment"). Because Jackson has not stated a plausible Fifth Amendment violation arising out of his initial arrest and interrogation, this claim will be dismissed. Having afforded Jackson a prior opportunity to cure the defects in this claim, and it appearing that further opportunity to amend would be futile, this claim will be dismissed with prejudice.

### ii.      The Meeting with the District Attorney

Second, to the extent that Jackson alleges Rosen violated his Fifth Amendment rights during the meeting with District Attorney Copeland in late June 2018, that claim will also be dismissed. Jackson does not allege what information he gave Rosen and Copeland during that meeting, whether Rosen used any of those statements against him at trial, or even whether information gleaned from later phone surveillance was used against him at trial.[9] Accordingly, any Fifth Amendment claim based on this allegation will also be dismissed. Having afforded Jackson a prior opportunity to cure the defects in this claim, and it appearing that further opportunity to amend would be futile, this claim will be dismissed with prejudice.

### iii.     The Second Arrest – July 21, 2018

Third, Jackson alleges that his Fifth Amendment rights were violated during the second arrest, when Rosen, Coffin, and an unnamed Bucks County detective questioned Jackson about the heroin deal in Bucks County. Jackson alleges that he denied knowing anything about the drug deal and asked for an attorney and to remain silent, but Rosen denied his requests and gave him a statement to give to the Bucks County detective. For fear that the officers would continue to assault him, Jackson complied with Rosen's order and allowed the Bucks County detective to record his statement. Twenty-three months later (around June 2020), Jackson was charged in

---

[9] As discussed below, there is no evidence that Jackson, who pled guilty, ever went to trial.

Bucks County for the heroin deal, allegedly because of the coerced confession.  Jackson does not

provide the current status of the Bucks County case, nor does he contend that the allegedly

coerced confession has been used against him at trial in that case.[10]  Therefore his Fifth

Amendment claim fails on this ground as well.  *Cf. Renda*, 347 F.3d at 559 (emphasizing that the

coerced statements must be used "during a criminal trial, and not in obtaining an indictment" or

otherwise bringing charges to implicate the Constitution).  However, this claim is dismissed

without prejudice, and with the understanding that Jackson may reassert this claim if the

allegedly coerced statements are used against him during trial.[11]

### 3.   *Sixth Amendment Claim*

Under the Sixth Amendment, "[i]n all prosecutions, the accused shall enjoy the right . . .

to have the assistance of counsel for his defence."  U.S. Const. amend. VI.  This right to counsel,

however, does not attach until criminal proceedings are initiated against a defendant, such as in

the form of a "formal charge, preliminary hearing, indictment, information, or arraignment."

*Kirby v. Illinois*, 406 U.S. 682, 688–89 (1972).  In the June Memorandum, the Court dismissed

without prejudice Jackson's Sixth Amendment claim because Jackson did not allege that he was

denied an attorney after criminal proceedings were initiated on July 21, 2018.  (Doc. No. 4 at 9–

10.)  As mentioned above, Jackson claims he was denied an attorney when he was originally

arrested on June 1, 2018, when he met with the District Attorney in late June 2018, and when he

was arrested a second time on July 21, 2018.  However, Jackson does not allege that he was

denied an attorney after he was officially charged.  Because Jackson does not claim that he was

---

[10] A review of public records shows that Jackson was charged in Bucks County in June 2020 and is currently awaiting a preliminary hearing.

[11] We express no opinion on whether Jackson's alleged confession, if used at trial, would amount to a violation of the Fifth Amendment.  Instead, we hold only that Jackson's Fifth Amendment claim fails at this stage because he has not alleged that those statements were used against him at a criminal trial.

denied an attorney after criminal proceedings were initiated on July 21, 2018, his Sixth

Amendment claims against Rosen and Coffin will also be dismissed.  Having afforded Jackson a

prior opportunity to cure the defects in this claim, and it appearing that further opportunity to

amend would be futile, this claim will be dismissed with prejudice.

### 4.  *Fourteenth Amendment Due Process Claims*

Next, Jackson argues that Rosen violated his Fourteenth Amendment Due Process rights.

Jackson argues that he was denied his right to procedural due process when Rosen waited 50

days after the initial arrest to take Jackson before a magistrate judge.  He also argues that Rosen

violated his substantive due process rights when he refused to give Jackson water or food for 14

to 16 hours while he was being held at the Marple Township Police Department.  We address

each claim in turn.

### i.  *Delay in Seeing Magistrate Judge*

In the June Memorandum, we dismissed Jackson's due process claims because it was

"not entirely clear on what basis Jackson alleges he was denied due process."  (Doc. No. 4 at 12.)

Jackson cited to a number of Pennsylvania procedural rules, including Rule 517, which requires

that an individual arrested with a warrant be brought before a judge for bail without

"unnecessary delay."  But Jackson did not allege any facts tending to show that Rosen violated

those procedural rules, and for that reason, we dismissed his due process claims but granted him

leave to amend.  (*Id.*)  We find that Jackson has cured the defects identified in the June

Memorandum.

"To state a claim under § 1983 for deprivation of procedural due process rights, a

plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within

the Fourteenth Amendment's protection of 'life, liberty, or property, and (2) the procedures

available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (quotation marks omitted)).  In the amended complaint, Jackson alleges that Rosen's conduct after his initial arrest — ordering Jackson to stay in Delaware County and forcing him to act as a confidential informant — violated his "right to travel without due process abridging his liberty."  When his role as confidential informant did not pan out, Rosen arrested Jackson a second time — apparently for the same offenses as the first arrest.  Although Jackson saw a magistrate judge within 24 hours of his second arrest, he claims the first arrest date is the one that matters for due process purposes.  (Doc. No. 7 at 13–14 (arguing that Jackson did not see "a magistrate to be arraigned, get bail or notice of charges until 50 days [after the initial arrest] for the crimes charged of 5/15/18 and 6/1/18").)

These allegations are sufficient for § 1915 screening purposes.  Jackson has plausibly alleged that Rosen used his authority to restrict Jackson's freedom of movement after his initial arrest and release.  *See Jones v. Helms*, 452 U.S. 412, 418–419 (1981) ("The right to travel has been described as a privilege of national citizenship, and as an aspect of liberty that is protected by the Due Process Clause of the Fifth and Fourteenth Amendments."); *see also Gallo v. City of Phila.*, 161 F.3d 217, 223 (3d Cir. 1998) (explaining that "a seizure is a show of authority that restrains the liberty of a citizen, or a government termination of freedom of movement intentionally applied" and finding that an individual's "post-indictment liberty was restricted" when, among other things, "he was prohibited from traveling outside New Jersey and Pennsylvania").  As that restriction continued for 50 days after his initial arrest, Rosen's purposeful decision not to take Jackson before a magistrate judge may have amounted to a violation of procedural due process.[12]  *Cf. Brown v. Lackawanna County*, No. 3:16-cv-2528,

_____

[12] Because Rosen initially arrested Jackson pursuant to a warrant, we do not analyze this claim under the Fourth Amendment framework.  *See Baker v. McCollan*, 443 U.S. 137, 144 (1979) (holding that the plaintiff's

2019 WL 1177979, at *9–10 (W.D. Pa. Mar. 13, 2019) (finding that "Plaintiff has clearly stated plausible claims for relief regarding violation of Fourteenth Amendment procedural due process rights" where she "was detained for almost two months before she had any judicial process related to charges for which she was arrested").

Jackson's procedural due process claim will be served on Rosen for a responsive pleading. However, because there is no assertion that Coffin was involved in any conduct before the second arrest, the claim is not plausible to the extent it is asserted against him and will be dismissed. *See Rode*, 845 F.2d at 1207.

### *ii.* *Substantive Due Process Denial of Food and Water*

Next, Jackson argues that after his second arrest, he was taken to Marple Township Police Department and that Rosen and other employees denied him food and water for 14 to 16 hours. Although Jackson raises this claim as an Eighth Amendment violation, "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until after sentence and conviction." *Hubbard*, 399 F.3d at 164 (quotation marks omitted). Because Jackson was not a convicted person when he was allegedly denied food and water, we look to whether the conditions of his pretrial confinement amounted to punishment in violation of the Fourteenth Amendment's Due Process Clause. *See id.* ("[W]hen pretrial detainees challenge conditions of confinement, their claims must be analyzed under the Due Process Clause of the Fourteenth

---

mistaken arrest and three-day detention did not amount to a Fourth Amendment violation because he was arrested pursuant to a valid warrant). Instead, the issue appears to be the restrictions placed on Jackson by Rosen after his "release," and Rosen's almost two-month delay in taking Jackson before a magistrate judge. Although an initial seizure may be justified by a valid arrest warrant and proper for Fourth Amendment purposes, a prolonged seizure without additional process may rise to the level of a Fourteenth Amendment due process violation. *Cf. id.* at 145 ("We may even assume, *arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant" may "after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law.'"); *see also Brown*, 2019 WL 1177979, at *9–10. We do not decide at this stage whether Jackson's allegations, if true, violated his right to procedural due process, but instead, hold only that he has stated a plausible claim for screening purposes.

Amendment."); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (explaining that a pretrial

"detainee may not be punished prior to an adjudication of guilt in accordance with due process of

law"). That said, Eighth Amendment case law is instructive on this issue because the Supreme

Court's standard for Eighth Amendment violations "based on nonmedical conditions of

confinement . . .also appl[ies] to appellants as pretrial detainees through the Due Process

Clause." *Kost v. Kozakiewicz*, 1 F.3d 176, 188 & n.10 (3d Cir. 1993).

Prison officials are required to provide detainees with "humane conditions of

confinement," including "adequate food, clothing, shelter, and medical care." *Farmer v.*

*Brennan*, 511 U.S. 825, 832 (1994). But "[b]efore a prison official can be found constitutionally

liable for denying an inmate humane conditions of confinement, it must be shown that the

alleged deprivation is objectively 'sufficiently serious' and that the prison official has a

'sufficiently culpable state of mind.'" *Flanyak v. Hopta*, 410 F. Supp. 2d 394, 402 (M.D. Pa.

2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)); *see also Farmer*, 511 U.S. at 837

("[A] prison official cannot be found liable . . . for denying an inmate humane conditions of

confinement unless the official knows of and disregards an excessive risk to inmate health or

safety."); *Kost*, 1 F.3d at 188 ("A plaintiff must prove that prison officials acted with deliberate

indifference and that he or she suffered a deprivation of the minimal civilized measure of life's

necessities." (quoting *Wilson*, 501 U.S. at 298–300)). In determining whether the alleged

deprivation is "sufficiently serious," the court considers both the severity and duration of the

deprivation. *See Burke v. Acco Brands, Inc.*, C.A. No. 05-371, 2007 WL 983698, at *5 (W.D.

Pa. Jan. 17, 2007); *see also DeSpain v. Uphoff*, 264 F.3d 965, 973 (10th Cir. 2001) ("In general,

the severity and duration of deprivations are inversely proportional, so that minor deprivations

suffered for short periods would not rise to an Eighth Amendment violation, while substantial

deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.").

Jackson alleges that he was denied food and water for 14 to 16 hours while in custody. Jackson alleges that he asked Rosen and other employees for food and water, and that his requests were denied.  Although Jackson's allegations suggest that Rosen knowingly denied him food and water, we find that this denial — which happened one time and lasted, at most, 16 hours — is not "sufficiently serious" to amount to a deprivation of Jackson's substantive due process rights.  *See Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) ("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation."); *cf. Fattah v. Symons*, Civ. A. No. 3:cv-10-1607, 2016 WL 6563711, at *4 (M.D. Pa. Nov. 4, 2016) (holding that prison official's order severely restricting inmate's food for one month was "of such magnitude as to rise to the level of a constitutional violation").  Therefore, Jackson's substantive due process claim will be dismissed with prejudice.

### 5.     *Fourteenth Amendment Equal Protection Claim*

In the original complaint, Jackson alleged race discrimination on the grounds that Rosen arrested Jackson but chose not to arrest Lassiter, a white male who was allegedly involved in the same drug trafficking incident.  We interpreted this claim as one for selective prosecution, and because a selective prosecution claim falls within the *Heck* bar, dismissed it until such time as Jackson's conviction is overturned or otherwise impugned.  (*See* Doc. No. 4 at 11.)  To the extent Jackson's amended complaint once again raises a claim for selective prosecution, that claim is dismissed.

## IV.    CONCLUSION

For the reasons stated above, the Fourth Amendment misrepresentation claim against Rosen, the excessive force claim for the first arrest on June 1, 2018, against Rosen, the excessive force claims for the second arrest on July 21, 2018, against Rosen and Coffin, and the Fourteenth Amendment procedural due process claim against Rosen will be served.  Jackson's Fifth Amendment claim related to the Bucks County case and his Fourteenth Amendment equal protection claim are dismissed without prejudice.  The remainder of the claims are dismissed with prejudice.

An appropriate Order follows.