IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACKSON,** <br><br> *Plaintiff,* <br><br> v. <br><br> **ROSEN et al.** <br><br> *Defendants.* | **CIVIL ACTION** <br><br><br> **NO. 20-2842** |

**Baylson, J.**                                                                                                                                     April, 17, 2025

**MEMORANDUM OPINION RE: SUMMARY JUDGMENT**

Presently before this Court is Edward Rosen and Nicholas Coffin's ("Defendants") Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**I.    BACKGROUND**

    **A.  Procedural History**

*Pro se* Plaintiff, Theodore Jackson, Jr. ("Jackson") filed his initial Complaint against Detective Edward Rosen ("Rosen") of the Marple Township Police Department on May 26, 2020. ECF 2. The case was originally assigned to Judge Marston. On June 26, 2020, the Court dismissed the Complaint in part with prejudice and in part without prejudice. ECF 4. Also on June 26, 2020, Jackson's Motion to Proceed *In Forma Pauperis*, ECF 1, was granted, ECF 5. On July 27, 2020, Jackson filed his First Amended Complaint against Rosen, Nicholas Coffin, a police officer with the Marple Township Police Department ("Coffin"), and the Marple Township Police Department. ECF 7. Jackson sued Rosen and Coffin in both their individual and official capacities. On August 28, 2020, all claims against the Marple Township Police Department were dismissed as well as certain claims brought against Defendants. ECF 9. On September 11, 2020,

1

Defendants filed a Motion to Dismiss Jackson's First Amended Complaint for Failure to State a Claim, ECF 16, which was denied, ECF 17.

On November 18, 2020, Jackson filed his Second Amended Complaint ("SAC"), ECF 28. On November 23, 2020, the case was reassigned to the undersigned. ECF 30. On November 24, 2020, Defendants filed a Motion to Dismiss Jackson's SAC for Failure to State a Claim. ECF 31. Jackson filed his Response on February 3, 2021, ECF 35, and Defendants filed their Reply on February 8, 2021, ECF 36. On March 18, 2021, this Court granted in part and denied in part the Motion to Dismiss the SAC. ECF 39. On April 5, 2021, Jackson filed a Motion to Clarify Claims. ECF 44. This Court granted Jackson's request to allege an additional excessive force and assault and battery claim against Rosen based on Rosen's actions before Jackson's second arrest. ECF 52. The remaining claims are:

1. Excessive Force claim based on both arrests against both Rosen and Coffin,
2. Excessive Force claim based on Rosen's actions before Jackson's second arrest against Rosen,
3. Assault and Battery claims based on both arrests against both Rosen and Coffin,
4. Assault and Battery claims based on Rosen's actions before Jackson's second arrest against Rosen,
5. Fourth Amendment misrepresentations in search warrant claim against Rosen,
6. Fourteenth Amendment procedural due process claim against Rosen, and
7. Abuse of process claim against Rosen.

On September 10, 2024, this Court granted Defendants' Motion to Take Deposition from Plaintiff. ECF 74, 76. Jackson's deposition was scheduled for September 25, 2024, via zoom

2

from SCI Phoenix. Jackson pled the Fifth Amendment claiming that he did not receive the Court Order in advance of the deposition date and needed two days to prepare.

On November 11, 2024, Defendants filed the present Motion for Summary Judgment. ECF 77. On November 27, 2024, Jackson filed a Motion to Reschedule his deposition, ECF 79, which Defendants opposed, ECF 80, and this Court denied, ECF 81. Jackson's Response to the Motion for Summary Judgment was initially due on November 25, 2024. On December 5, 2024, this Court Ordered Jackson to file a Response within thirty days. ECF 81. On December 9, 2024, Jackson filed a Motion for Continuance, ECF 83, which this Court granted, extending Jackson's time to file a Response until January 15, 2025, ECF 84. On February 3, 2025, this Court Ordered Jackson to respond to Defendants' Motion for Summary Judgment and Statement of Undisputed Facts within ten days. ECF 85. This Court further warned that if Jackson failed to respond then this Court would rule on the Motion and consider all facts asserted by Defendants undisputed for purposes of this Motion, pursuant to Federal Rule of Civil Procedure 56(e). On February 10, 2025, Jackson filed a "Motion to Oppose Summary Judgment," ECF 86, and on February 19, 2025, after the ten days to file a Response had elapsed, Jackson filed a second "Opposition to Summary Judgment," ECF 87.[1] At no point did Jackson respond to Defendants' Statement of Undisputed Facts. As such, this Court will construe all facts asserted in Defendants' Statement of Undisputed Facts as true for purposes of this Motion.

### B. Federal Rule of Civil Procedure 56(e)(2)

Rule 56(e)(2) of the Federal Rule of Civil Procedure provides: "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the

---

[1] Despite the fact that Jackson's "Opposition to Summary Judgment" was late-filed, in deference to Jackson's *pro se* status, this Court reviewed the filing and considers its contents in ruling on the Motion.

motion." In Defendants' Statement of Undisputed Facts, each numbered fact is properly supported by a citation to the record., see Defendants' Statement of Undisputed Facts, ECF 77 ("Def. Facts"), Jackson did not file a Response to Defendants' Statement of Undisputed Facts, as required by this Court's February 3, 2025, Order, and by its Policies and Procedures. See Judge Baylson Pretrial and Trial Procedures – Civil Cases at ¶ 1-3, 5. By failing to file a Response to Defendants' Statement of Undisputed Facts, "the nonmoving part waives the right to respond to or to controvert the facts asserted in the [Statement of Undisputed Facts]." Reynolds v. Rick's Mushroom Serv., 246 F.Supp.2d 449, 453 (E.D. Pa. 2003) (Rufe) (internal citations omitted). Thus, this Court's tasks is to determine whether, given these undisputed facts, Defendants are entitled to summary judgment.[2]

### C. Factual Background

Jackson alleges that Rosen and Coffin engaged in a series of unlawful actions that violated his constitutional rights and caused him physical harm.

#### 1. Jacksons' Contentions

To start, Jackson brings excessive force and assault and battery claims against both Defendants. Jackson alleges that Rosen supervised the first arrest while Coffin kneeled on his neck, causing bruising, scrapes, and cuts. SAC at ¶¶ 12-13 ("SAC"); MSJ at 7. Jackson further alleges that during his second arrest officers pushed him back and forth and Rosen assaulted him. SAC at ¶¶ 64-67; MSJ at 5. Jackson also alleges that during the lead-up to his second arrest,

---

[2] See Schuenemann v. United States, 2006 WL 408404, at *4 n.7 (3d Cir. 2006) (non-precedential) (holding that the district court properly deemed defendants' statement of facts as undisputed for summary judgment purposes where plaintiff failed to respond to each numbered paragraph of defendants' statement of facts); Robinson v. N.J. Mercer Cnty. Vicinage – Family Div., 562 Fed. App'x 145, 147 (3d Cir. 2014) (non-precedential) (holding that the district court did not err in concluding that defendants' material facts were undisputed where plaintiff failed to oppose defendants'' statement of material facts); Rosado v. Smith, 2022 WL 2255564, at *2 (E.D. Pa. Jan. 26, 2022) (Leeson) (deeming defendants' statement of undisputed facts undisputed because plaintiff did not file a response).

Rosen contacted him weekly, harassed him, and physically assaulted him. SAC at ⁋⁋ 64-67; Def. Facts at ⁋ 25.

Next, Jackson alleges that Rosen made a false statement in the search warrant Affidavit by stating that Jackson owned the property to be searched. SAC at ⁋⁋ 18-37, 37, 41-47.[3]

Finally, Jackson alleges that Rosen violated his procedural due process rights and abused the legal process by forcing Jackson to act as a confidential informant and ordering Jackson to remain in Delaware County after the first arrest. SAC at ⁋⁋ 56-57.

### 2. Defendants' Contentions

Defendants' Statement of Undisputed Facts and supporting exhibits detail the following sequence of events.

On June 1, 2018, Rosen obtained a search warrant for a residence known to be frequented by Jackson. Def. Facts at ⁋ 1. The Affidavit indicated that Jackson owned, leased, or occupied the residence. Def. Ex. A. The Affidavit detailed controlled drug transactions made by Jackson and witnessed by an undercover Rosen on May 15, 18, 26, and 29, 2018. Def. Facts at ⁋ 1. Officers surveilled Jackson and saw him enter and exit the residence on four separate occasions. Def. Ex. A.

---

[3] In his SAC, Jackson alleges that Rosen made additional misrepresentations, including that: (1) it would have been impossible for officers to surveil the residence's entrance, SAC at ⁋ 25, (2) the Affidavit mistakenly stated that Jackson was surveilled on May 29, 2018, when it should have read May 25, 2018, id. at ⁋ 26, (3) the Affidavit falsely states that Jackson was a drug dealer, id. at ⁋ 20, and (4) Rosen was not told by another informant that Jackson went by "Mitch" when selling drugs, id. at ⁋21. In his Response to this Motion, Jackson focuses on three alleged misrepresentations: (1) Rosen did not purchase drugs from Jackson in a controlled buy, (2) the Inventory Receipt does not include the heroin allegedly purchased from Jackson, and (3) Jackson did not own the residence. ECF 87. It is undisputed that Jackson sold drugs to an undercover Rosen. Further, the Affidavit states that a positive field test was conducted following the May 29, 2018, purchase. Def. Ex. A, ECF 77-1. Jackson also stated in his Plea Hearing that he understood that by pleading guilty he was "basically agreeing [that he] did the things as stated in the Affidavit of Probable Cause." Def. Ex. G at 11:12-16. As such, this Court will only assess the merit of Jackson's third claim.

Also on June 1, 2018, Jackson was arrested ("first arrest") after selling narcotics to an undercover Rosen. Def. Facts at ¶ 3. Neither Defendant was part of the team that arrested Jackson. Def. Ex. M at ¶ 3, ECF 77-13. While in custody, in response to Rosen's questioning, Jackson stated that he had only slept at the residence at which the search warrant was executed a few times, but not recently. Def. Facts. at ¶ 23. This is contrary to the statement given by the residence's primary tenant, arrested with Jackson, who stated that he had allowed Jackson to stay at the residence for the last several weeks. Def. Ex. B at 10, ECF 77-2.

Rosen agreed to release Jackson, who had an outstanding state parole warrant, on the condition that Jackson provide information. Def. Facts at at ¶ 24. Jackson was not charged following the first arrest. Id. at ¶ 3. Defendants state that Jackson made this decision voluntarily, they describe how, "[b]ack at the station, Detective Rosen told Jackson that [Rosen] could use [Jackson], but that if [Rosen] charged [Jackson] that the state parole detailer would be lodged and Rosen would not be able to use him, so Rosen got permission to let Jackson go without charging [Jackson]." Id. at ¶ 6. Later in June, Rosen took Jackson to the District Attorney's Office where Jackson met with the Delaware County District Attorney Kat Copeland. Id. at ¶ 26. Copeland instructed Jackson to sign papers that would authorize Copeland to listen to Jackson's phone. Id.

Jackson was arrested again on July 20, 2018, ("second arrest") on the warrant from the first arrest. Def. Facts at ¶ 10. Jackson's second arrest was prompted by an investigation, led by Bucks County police officer Jake Gallagher, into a drug overdose death in which Jackson was a suspect. Id. at ¶ 9. Gallagher contacted Rosen regarding the investigation and Rosen arranged for a meeting with Jackson, at which time Jackson was arrested. Id. Jackson provided a recorded statement in which he admitted to selling drugs to the decedent and disclosed that he

6

obtained the drugs in West Philadelphia. Id. at ¶ 9, 31. Jackson signed a waiver of rights form, his statement was recorded, and in the recorded statement Jackson reiterates that he is providing the statement of his own free will. Id. at ¶¶ 11, 12, 31.

On July 10, 2019, Jackson pled guilty to felony delivery of a controlled substance, felony possession of a controlled substance with the intent to deliver, possession of drug paraphernalia, and felony criminal use of a communication facility occurring on June 1, 2018. Id. at ¶ 13. At the Plea Hearing, Jackson agreed to the statements in the Affidavit of Probable Cause, drafted by Rosen, that included information from the search warrant. Id.

On June 10, 2020, Jackson was charged in Bucks County for involuntary manslaughter, drug delivery resulting in death, and other related charges. Id. at ¶ 16. While awaiting trial for the Bucks County case, Jackson filed an Omnibus Pretrial Motion to exclude his July 20, 2018, statement, premised on the fact that the statement was made because of "threats, intimidation, deceit, and improper inducements." Id. at ¶ 43. The Motion did not assert any claims of physical force or excessive force. Id. at ¶ 45. Jackson eventually entered a Nolo Contendre plea on January 17, 2024, in the Bucks County case. Id. at ¶ 46.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it

believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## III. DISCUSSION

While this Court accepts Defendants' Statement of Undisputed Facts, in deference to Jackson's *pro se* status, this Court has carefully reviewed the entire record for evidence. We found and considered the following documents attached by Jackson to various filings:

- December 31, 2020, signed Affidavit by Jackson's mother, Rosalyn Jackson, that describes a warrantless search conducted at her home on March 28, 2018, in which unidentified Upper Darby police officers, plain clothed detectives, and Criminal Investigation Division ("CID") agents spent over an hour in Jackson's room and removed a shoebox sized item. ECF 35.

- December 31, 2020, signed Affidavit by Jackson's father, Theodore Jackson Sr., that describes a phone call that he received from his wife on March 28, 2018, in which she explained that police were conducting a warrantless search of their home. Jackson Sr.'s

Affidavit also states that when he returned home, he found that furniture had been destroyed and over $6,000, which had been stored throughout the house, was missing. ECF 35.

- June 1, 2018, Receipt/Inventory of Seized Property, that indicates that Rosen conducted the search and issued the Receipt, and that Coffin was the witness. The Receipt shows that various items, including over 100 clear Ziplock bags stamped with a purple "stick person" design, a clear knotted plastic bag containing an off-white powder, "two round green pills in small Ziploc [bags] stamped Teva-833," a red plastic container with a green leafy vegetable matter in it, $760 in U.S. currency, two digital scales, three boxes of ammunition, and a semi-automatic handgun with a loaded magazine were recovered. ECF 86 at 5, ECF 87 at 5.

- June 7, 2018, "Prelog Request for Forensic Analysis" that confirmed that drugs were identified in the Ziploc bags, clear plastic bag, two green pills, and green leafy vegetable. ECF 87 at 4.

- July 20, 2018, Warrant to Commit and Detain. ECF 86 at 3.

- July 30, 2018, Hearing Report that indicates that Jackson attended a Violation and Detention Hearing. ECF 86 at 4.

This Court also considers documents filed by Defendants' including:

- June 1, 2018, Affidavit authored by Rosen that states that the property was owned, occupied, or possessed by Jackson. The Affidavit also states that police witnessed Jackson enter or exit the residence on May 15, May 18, May 29, and May 30, 2018. Def. Ex. A.

9

- June 1, 2018, Incident Report, in which Rosen states that the residence's primary tenant informed Rosen that the residence was his and that he had allowed Jackson to stay there for several weeks. Rosen also states that he and Jackson arrived at the Marple Township Police Department separately and that when he arrived he was informed that Jackson wished to speak to him, at which time Rosen re-read Jackson his Miranda rights. Def. Ex. B.

- July 20, 2018, Incident Report in which Rosen states that he arrested Jackson and read Jackson his Miranda rights. Rosen states that he asked Jackson if he would agree to a recorded interview. Rosen states that he re-read Jackson his Miranda rights, Jackson consented to the recording, and Jackson signed the Marple Township Police Department "Advise of Rights" form. Rosen states that Jackson then gave a recorded statement in which he admitted to selling drugs to the decedent. Def Ex. C, ECF 77-3.

- A signed Advice of Rights Form. Def. Ex. E, ECF 77-5.

- A recorded statement in which Jackson states that he travelled to West Philadelphia to buy five bags of heroin which he then sold to the decedent. Def. Ex. F, ECF 77-6.

- July 21, 2018, Booking Observation Report in which Jackson indicates that his only medical, mental or dental need is dental care. Def. Ex. I, ECF 77-9.

- Omnibus Pre-Trial Motions filed by Jackson's attorney, Senior Public Defender Suzette Adler, in which Jackson argues that his July 20, 2018, statement should be suppressed because "police subject [Jackson] to threats, intimidation, deceit, and improper inducements." The Motion does not argue that physical force was used to induce Jackson's statement. Def. Ex. J, ECF 77-10.

10

- Defendants' Response to Jackson's First Set of Interrogatories in which they deny ordering Jackson to remain within Delaware County after his June 1, 2018, arrest. Def. Ex. L, ECF 77-12.
- Defendants' Responses to Jackson's Second Set of Interrogatories in which they state that (1) neither was part of the arrest team during Jackson's first arrest, (2) Rosen placed Jackson in handcuffs during the second arrest, this was the only force Rosen used on Jackson, (3) Coffin removed the handcuffs from Jackson at the police station, following Jackson's second arrest, this was the only force Coffin used on Jackson, (4) after the first arrest, Jackson requested to speak with Rosen and indicated that he wanted to cooperate, and (5) Jackson cooperated with the CID Task Force through Rosen. Def Ex. M.

The evidence proffered by Jackson does not support his claims. The only "evidence" that supports Jackson's claims are the allegations set forth in the SAC.[4] Jackson's conclusory allegations, without any additional evidence, are insufficient to plausibly demonstrate that a genuine issue of material fact exists. See Jackson v. Beard, 364 Fed. App'x 332, 333 (3d Cir. 2010) (non-precedential). Jackson's "mere denials of facts do not merit the rejection of defendants' summary judgment motion." Id. However, in deference to Jackson's *pro se* status, this Court reviews the sufficiency of Defendants' evidence to determine whether any questions of material fact remain.

### A. Excessive Force

In Graham v. Connor, the Supreme Court held that claims of excessive force by police officers are to be analyzed under the Fourth Amendment's "objective reasonableness" standard.

---

[4] This Court takes note of the Affidavits of Rosalyn Jackson and Theodore Jackson Sr. However, the Affidavits detail a search of their home on March 28, 2018, that has no bearing on the claims at issue – that stem from alleged police conduct in June and July 2018.

11

490 U.S. 386, 394, 395 (1989).  The Court identified the following factors to be considered when determining whether the force used was excessive: the severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting or evading arrest.  See id. at 396.  Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.

To start, the undisputed facts show that neither Defendant was part of the arrest team during Jackson's first arrest, this precludes any claim that either used excessive force in effectuating the arrest.  Def. Ex. M at ¶ 3.

Additionally, Defendants both state that the only force they used on Jackson during his second arrest was the force necessary to place and remove Jackson's handcuffs.  Def. Ex. M at ¶ 3.  This is supported by the Booking Observation Report, from July 21, 2020, the day after Jackson's second arrest, which indicates that when asked whether he had any medical, mental, or dental needs, Jackson answered that he only required dental care.  Def. Ex. I.  Finally, in a Pretrial Omnibus Motion, Jackson argued that police officers, without identifying Rosen or Coffin specifically, coerced him into providing the recorded statement, taken after his second arrest.  Def. Ex. J at ¶¶ 34-41.  Nowhere in the Motion did Jackson argue that physical force was used to coerce him into providing the statement.  Id.

As to the claim that Rosen used excessive force on Jackson in the lead-up to the second arrest, Rosen states that Jackson was cooperating with the CID through Rosen.  Def. Ex. M at ¶ 5. The Booking Observation Report also supports that Rosen did not use excessive force on Jackson.  Less than two months elapsed between Jackson's first arrest and his booking, Rosen and Jackson's relationship was allegedly ongoing during this period, and on the Booking Report

Jackson indicated that he had no medical needs.  Def. Ex. I.  If Rosen had used excessive force on Jackson during that seven-week period, it is likely that Jackson would have indicated that he had medical or mental health needs on the Booking Report.

The undisputed facts show that no reasonably jury could find that Defendants used excessive force against Jackson (1) during an arrest for which neither Defendant was on the arrest team, (2) during an arrest for which Defendants state that the only force they used upon Jackson was to place and remove handcuffs and to which Jackson himself did not indicate caused any medical needs, or (3) in the lead-up to the second arrest where Rosen states that Jackson cooperated with CID and where Jackson did not indicate that he had any medical needs stemming from his interactions with Rosen.  Defendants' Motion is granted on all excessive force claims.

### B. Assault & Battery

Under Pennsylvania law, an assault is "an intentional attempt by force to do injury to the person of another and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  <u>Rosembert v. Borough of E. Lansdowne</u>, 14 F.Supp.3d 631, 644 (E.D. Pa. 2014) (Goldberg).

Defendants' Motion is granted on the assault and battery claims for the same reasons that it is granted on the excessive force claims, as both claims arise from the same set of facts. Defendants' Statement of Undisputed Facts, which are supported by record evidence, state that Defendants never used any physical force on Jackson, besides placing and removing his handcuffs.  As such, it undisputed that Defendants never attempted to injure Jackson by force or actually used force on Jackson.

### C. Procedural Due Process

To succeed on a claim "under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property, and (2) the procedures available to him did not provide due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006) (internal citations omitted)).

Jackson asserts that Rosen violated his procedural due process rights when Rosen forced him to act as a confidential informant and ordered him to remain in Delaware County. Jackson provides no evidence to support either claim. Taking Defendants Statement of Undisputed Facts as true, there are no facts showing that Rosen forced Jackson to act as a confidential informant or ordered Jackson to remain in Delaware County. Defendants undisputed facts state that "[b]ack at the station, Detective Rosen told Jackson that [Rosen] could use [Jackson], but that if [Rosen] charged [Jackson] that the state parole detailer would be lodged and Rosen would not be able to use [Jackson], so Rosen got permission to let Jackson go without charging him." Def. Facts at ¶ 6. Moreover, Rosen stated in both the June 1, 2018, Incident Report and his response to Jackson's interrogatories, that Jackson approached him about becoming an informant and cooperated with the CID Task Force, through Rosen. Def. Exs'. A, M at ¶ 5. Additionally, Jackson willingly went with Rosen to meet with Copeland, the District Attorney, and signed papers that authorized Copeland to listen to his phone. Def. Facts at ¶ 26. Defendants also specifically deny that Rosen ordered Jackson to remain in Delaware County following his first arrest. Def. Facts at ¶ 48; Def. Ex. L. Moreover, the evidence shows that Jackson left Delaware County on at least one occasion after his first arrest, to travel to Philadelphia, to purchase the drugs sold to the decedent. Def. Ex. C.

The undisputed facts show that no reasonable jury could find that Rosen violated Jackson's procedural due process rights by forcing him to work as a confidential informant or ordering him to remain in Delaware County where (1) Jackson initiated the cooperative relationship, and as a result of which was not charged after his first arrest, (2) Rosen received approval for Jackson to act as an informant, (3) Jackson willingly met with the District Attorney and signed papers authorizing her to listen to his phone, (5) Rosen specifically denies ordering Jackson to remain in Delaware County, and (6) Jackson admits to leaving Delaware County on at least on occasion. Summary judgment is granted on the procedural due process claims.

### D. Abuse of Process

"Pennsylvania recognizes a cause of action for abuse of process where 'the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.'" Marable v. W. Pottsgrove Twp., 176 Fed. Appx. 275, 281 (3d Cir. 2006) (non-precedential) (quoting Rosen v. Am. Bank of Rolla, 627 A.2d 190, 192 (Pa. Super 1993)). "An abuse of process is by definition a denial of procedural due process." Jennings v. Shuman, 567 F.2d 1213, 1220, (3d Cir. 1977).

Defendants Motion is granted on the abuse of process claim for the same reasons that it is granted on the procedural due process claim, as both claims arise out of the same set of facts. Defendants undisputed facts, which are supported by the evidence of record, state that Jackson willing acted as a confidential informant and Rosen did not order Jackson to remain in Delaware County. As such, it is undisputed that Defendants did not use any legal process *against* Jackson for a purpose it was not designed to serve.

### E. Misrepresentation

"A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56 (1978)." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (quoting Lippay v. Christos, 996 F.2d 1490, 1502, 1504 (3d Cir. 993)). "This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission." Id. A plaintiff must prove, by a preponderance of the evidence, that (1) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant; and (2) the statements or omissions are material, or necessary, to the finding of probable cause." Id. (citing Franks, 438 U.S. at 171-72).

Jackson argues that Rosen made misrepresentations in the Affidavit when he stated that the residence was owned by Jackson. However, the Affidavit did not state that Jackson owned the property, but rather that he owned, leased, or occupied the property. Def. Ex. A. Further, the primary tenant, who was arrested with Jackson on June 1, 2018, stated that he had allowed Jackson to stay at the apartment for the past several weeks, and officers surveilled Jackson entering and exiting the property on at least four occasions. Id., Def. Ex. B. As such, Jackson cannot show that Rosen knowingly and deliberately, or with a reckless disregard for the truth, made a false statement.

Even if Jackson could establish the first prong of the Franks analysis, Jackson cannot show that whether he occupied the property was material to the finding of probable cause. An affidavit should establish that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Stearn, 597 F.3d 540, 554 (3d Cir. 2010)

(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  The Affidavit described multiple occasions where police surveilled Jackson exit the residence and drive to a drug sale or complete a drug sale and then drive to the residence.  Def. Ex. A.  The Affidavit also explained that an undercover Rosen completed four controlled buys from Jackson.  Id.  Importantly, the Affidavit states that less than forty-eight hours prior to the warrant application, on May 30, 2018, Rosen observed Jackson enter the residence, approximately one minute after which Rosen received a text message from Jackson stating that Jackson had "[g]ot my normal back."  Id. at 8.  Rosen interpreted Jackson's message to mean that Jackson had acquired additional heroin.  Id.

The undisputed facts show that no reasonable jury could conclude that Rosen knowingly or with a reckless disregard for the truth made false statements in the Affidavit that were necessary to the magistrate judge's finding of probable cause where (1) Rosen did not state that Jackson owned the residence, but rather that he owned, leased, or occupied the residence, (2) Rosen had been surveilled entering and exiting the residence on several occasions, (3) the residence's primary tenant confirmed that Rosen had been living at the residence for the past several weeks, (4) police surveilled Jackson arrive at drug sales from the residence and leave drug sales and return to the residence, and (5) Rosen observed Jackson enter the residence and less than a minute later receive a text from Jackson stating that Jackson had obtained additional amounts of heroin. Summary judgment is granted on the misrepresentation claim.

## IV. **CONCLUSION**

"The law is clear that a plaintiff cannot rely on either unsupported, unexplained assertions, or conclusory allegations in an attempt to survive a motion for summary judgment." Jackson, 2009 WL 2147852, at *6 (citing Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989)).  As this Court accepts Defendants Statement of Undisputed Facts and Jackson

17

relies solely on the allegations in his SAC, Defendants' Motion for Summary Judgment will be granted.[5]

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 20\20-2842 Jackson v Rosen\20-2842 MSJ Opinion.docx

---

[5] This Court grants summary judgment without ruling on qualified immunity.